# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
ROBERT SARHAN,                    )
                                  )
          Plaintiff,              )
                                  )
     v.                           )    1:23CV657
                                  )
UNITED STATES CITIZENS &          )
IMMIGRATION SERVICES, et al.,     )
                                  )
          Defendants.             )
```

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This case comes before the undersigned United States Magistrate Judge for a recommended ruling on Plaintiff's Motion for Fiancée to Come to North Carolina Immediately (Docket Entry 22 ("First Preliminary Relief Motion")) and his Emergency Motion to Grant Visa for Shivani Bennet to Visit Her Family Here in North Carolina for the Christmas Holidays (Docket Entry 34 ("Second Preliminary Relief Motion")). The Court should deny the First Preliminary Relief Motion and the Second Preliminary Relief Motion.

## INTRODUCTION

Plaintiff instituted this action by filing a pro se Complaint (Docket Entry 1), against United States Citizenship and Immigration Services ("USCIS"), the Director of USCIS, the Secretary of the United States Department of Homeland Security (the Department

housing USCIS), and two subordinate USCIS officials (see id. at 2-4, 6-7).[1] The Complaint asserts these six claims for relief:

1) "Contrary to Constitutional Right and Without Observance of Procedure Required by Law[,] Arbitrary and Capricious[,] and Not in Accordance with Law" (id. at 13 (underscoring omitted); see also id. at 14 (alleging that USCIS's handling of visa request for Plaintiff's fiancée "violated [P]laintiff's right to due process of law under the United States Constitution" and that Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2), authorizes relief));

2) "Action, Findings and Conclusions in Excess of Statutory Authority" (id. at 15 (underscoring omitted); see also id. at 15-16 (challenging USCIS's application of 8 C.F.R. § 214.2(k) and invoking Section 706(2)(A) and (C) of APA));

3) "Agency Action Unlawfully Withheld and Unreasonably Delayed" (id. at 16 (underscoring omitted); see also id. at 16-17 (citing "8 U.S.C. § 1201 note 6" in relation to contention that "USCIS regularly fails to review fiancée visas within a reasonable period of time" and also contending APA "allows [c]ourts to compel agency action unlawfully withheld or unreasonably delayed"));[2]

---

[1] Pin cites to the Complaint refer to the page numbers that appear in the footer appended to the Complaint upon its docketing in the CM/ECF system (not any original pagination).

[2] Plaintiff's filings spell "fiancée" in a variety of ways, but – for ease of reading – this Recommendation modifies any quotations from those filings to conform to the foregoing spelling.

2

4) "Agency Action Unlawfully Denied the Fiancée Visa for Churning Fees" (id. at 17 (underscoring omitted); see also id. at 18 ("USCIS Churning can be defined as the practice of denying fiancée visas, therefore the petitioner must appeal and pay another $675.00, and the Appeals Office denies the visa and then you have to pay another $675.00 to file a I-290B, and during this time period you must wait an average of one year between filings."), 19 ("Churning is illegal and unethical . . . ."));

5) "Federal Tort Claim [sic] Act" (id. at 19; see also id. ("[The two subordinate USCIS officials] denied our fiancée visa for churning fees . . . [and] denied our fiancée visa without given [sic] a chance to respond, a violation of due process.")); and

6) "Declaratory and Mandamus Relief" (id. at 20 (underscoring omitted); see also id. ("Plaintiff's claims qualify for mandamus relief because the statutory and Constitutional claims are clear, [D]efendants' duties are not in doubt, and in the case of any remedies not available under the APA, no other adequate remedy is available. . . . Plaintiff's claims . . . also qualify for declaratory relief . . . .")).

In connection with those six claims, the Complaint "petitions this Court for injunctive, declaratory and [m]andamus relief to: (a) compel [the two subordinate USCIS officials] to immediately issue [a] fiancée visa [to Plaintiff's fiancée;] (b) compel [the] State Department to immediately schedule a visa interview [with

3

Plaintiff's fiancée; and] (c) compel [the] State Department to immediately issue a K-1 visa to [Plaintiff's fiancée]." (Id. at 3; see also id. at 21-22 ("request[ing] that this Court" (A) "issue a writ of mandamus compelling the USCIS to immediately issue the fiancée visa," (B) "issue a writ of mandamus to the State Department to expedite a K-1 visa to [Plaintiff's] fiancée," and (C) award damages against each of two subordinate USCIS officials of "$50,000 under the Federal Tort Claim [sic] Act," as well as "$5,000.00 per month from the date of filing this lawsuit, until [Plaintiff's] fiancée is granted the visa and allowed to enter into the United States").) According to the Complaint:

> This Court has jurisdiction over this action under 28 U.S.C. § 1331 (federal question) and may review [D]efendants' actions or omissions under the [APA], the Mandamus Act, 28 U.S.C. § 1361, the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq. (declaratory relief) and [t]he Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671-2680 . . . .

(Docket Entry 1 at 3-4 (stray period omitted).)

Defendants have "move[d] the Court to dismiss [the] Complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." (Docket Entry 30 at 1; see also Docket Entry 31 (supporting brief).) Plaintiff has responded in opposition (see Docket Entry 33) and Defendants have replied (see Docket Entry 35).

Before the parties made those filings, Plaintiff filed the First Preliminary Relief Motion, "requesting this Honorable Court to enforce the Writ of Mandamus and grant [Plaintiff's] fiancée,

4

Shivani Bennet, the legal right to enter the United States immediately, so [they] can live under one roof, as husband and wife and start a family."  (Docket Entry 22 at 1.)  More specifically, the First Preliminary Relief Motion asks the Court to "issue a writ of mandamus compelling the USCIS to immediately issue the fiancée visa" (id. at 7) and to "issue a writ of mandamus to the State Department to expedite a K-1 visa to [Plaintiff's] fiancée" (id.). The undersigned Magistrate Judge previously held a status hearing to address various matters in this case, including the First Preliminary Relief Motion, but deferred any recommended ruling thereon pending review of the motion to dismiss for lack of subject matter jurisdiction (the filing of which Defendants' counsel had forecasted during the hearing), along with any response by Plaintiff.  (See Minute Entry dated Nov. 1, 2023.)

On December 18, 2023, Plaintiff filed the Second Preliminary Relief Motion, in which he "move[d] this Honorable Court to issue a sua sponte [o]rder, or grant an emergency hearing, to issue [his fiancée] a 'visa or Judges [sic] Order' to get on a plane and travel from New Delhi[,] India to Raleigh[-]Durham[,] North Carolina, to be with her family for Christmas."  (Docket Entry 34 at 1 (italics omitted); see also id. at 2 ("pray[ing] this Honorable Court will grant a sua sponte [e]mergency [o]rder, or emergency hearing ordering [Plaintiff's fiancée] the right to board a plane from New Delhi to Raleigh[-]Durham[,] N.C. immediately").)

5

DISCUSSION

"The Immigration and Nationality Act . . . defines [as one if its] classes of nonimmigrant aliens . . . 'the fiancee or fiance of a citizen of the United States who seeks to enter the United States solely to conclude a valid marriage with the petitioner within ninety days after admission . . . .'" Regis v. Holder, 769 F.3d 878, 879 (4th Cir. 2014) (internal ellipsis omitted) (quoting 8 U.S.C. § 1101(a)(15)(K)(i)). "Th[is so-called K-1] visa process begins when a U.S. citizen petitions the Department of Homeland Security to designate a foreign national as a nonimmigrant fiancé or fiancée . . . ." Id. "USCIS, a component of the United States Department of Homeland Security, is charged with reviewing and approving petitions based on a number of statutory and regulatory factors." Macena v. U.S. Citizenship & Immigr. Servs., Civ. No. 14-3464, 2015 WL 6738923, at *2 (D. Md. Nov. 2, 2015) (unpublished). "[An] approved petition is forwarded to the U.S. consulate in the fiancée's home country. The fiancée must then submit a visa application to the U.S. consulate in her home country, requesting a K-1 visa . . . ." Regis, 769 F.3d at 879 (internal citation omitted).

"[A United States Department of State] consular officer is charged with issuing the actual visa." Macena, 2015 WL 6738923, at *3. "After receipt of an approved visa application, the consulate issues the K[-1] visa[] . . . ." Regis, 769 F.3d at 879. "The

6

consular officer, however, may refuse to issue the visa if the consular officer knows or has reason to believe that the person seeking the visa is ineligible to receive it." Macena, 2015 WL 6738923, at *3 (internal quotation marks omitted); see also id. ("The person seeking the visa has the burden to prove eligibility, and, if such person fails to establish to the satisfaction of the consular officer that [s]he is eligible to receive a visa . . ., no visa shall be issued to such person." (internal brackets, ellipsis, and quotation marks omitted)). Thus, "under the legal regime for the issuance of nonimmigrant visas to fiancees of U.S. citizens, USCIS . . . has no authority to issue [such visas]." Id. at *2.

As detailed in the Introduction, the First Preliminary Relief Motion and the Second Preliminary Relief Motion seek preliminary injunctive relief in the form of (A) directives from the Court requiring USCIS and/or the State Department to issue a K-1 visa to Plaintiff's fiancée, or (B) the Court's own authorization for her to enter the United States. "[T]he [United States Court of Appeals for the] Fourth Circuit has stated that district courts have the authority to issue preliminary injunctive relief in mandamus actions arising under [Section] 1361." Center for Const. Rts. v. Lind, 954 F. Supp. 2d 389, 396 (D. Md. 2013) (citing Starnes v. Schweiker, 715 F.2d 134, 142 (4th Cir. 1983), vacated on other grounds sub nom., Heckler v. Starnes, 467 U.S. 1223 (1984)); see also United States ex rel. Rahman v. Oncology Assocs., P.C., 198

7

F.3d 502, 511 (4th Cir. 1999) ("While the writ [of mandamus] is recognized at law [under Section 1361], it is administered with equitable principles in the interest of justice and at the discretion of the issuing court."); Swan v. Clinton, 100 F.3d 973, 976 n.1 (4th Cir. 1996) ("not[ing] that a request for an injunction based on the general federal question statute is essentially a request for a writ of mandamus . . . where the injunction is sought to compel federal officials to perform a statutorily required ministerial duty."). However, "[a] preliminary injunction is an extraordinary remedy . . . ." Di Biase v. SPX Corp., 872 F.3d 224, 236 (4th Cir. 2017). Accordingly:

> To obtain the "extraordinary relief" of a preliminary injunction, a plaintiff must establish the four so-called *Winter* factors: (1) that he's likely to succeed on the merits; (2) that he's likely to suffer irreparable harm if preliminary relief isn't granted; (3) that the balance of equities favors him; and (4) that an injunction is in the public interest.

Frazier v. Prince George's Cnty., 86 F.4th 537, 543 (4th Cir. 2023) (citing Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008)); see also Pashby v. Delia, 709 F.3d 307, 320 (4th Cir. 2013) ("[E]ach preliminary injunction factor [must] be satisfied as articulated." (internal citation and quotation marks omitted)).

Likewise, "[t]he mandamus remedy is a 'drastic one' reserved for 'extraordinary situations' involving the performance of official acts or duties." Rahman, 198 F.3d at 511 (quoting Kerr v.

8

United States Dist. Ct. for N. Dist. of Cal., 426 U.S. 394, 402 (1976)). To secure this drastic remedy:

> [T]he party seeking the writ must demonstrate that (1) he has a clear and indisputable right to the relief sought; (2) the responding party has a clear duty to do the specific act requested; (3) the act requested is an official act or duty; (4) there are no other adequate means to attain the relief he desires; and (5) the issuance of the writ will effect right and justice in the circumstances.

Id. As a result, a plaintiff pursuing mandamus relief "must demonstrate not only that he has a clear right to the relief sought but also that the responding party has a clear duty to perform the act amounting to the relief sought." Id. (emphasis added).

Given that only a State Department consular official may issue a K-1 visa to Plaintiff's fiancée and that Plaintiff has not made the State Department (or any of its officials) a party to this case, Plaintiff cannot obtain the relief he has sought in the First Preliminary Relief Motion or the Second Preliminary Relief Motion. As the United States Supreme Court long ago explained:

> It is a principle of general application in Anglo-American jurisprudence that one is not bound by a judgment in personam in a litigation in which he is not designated as a party or to which he has not been made a party by service of process. A judgment rendered in such circumstances is not entitled to the full faith and credit which the Constitution and statute of the United States prescribe and judicial action enforcing it against the person or property of the absent party is not that due process which the Fifth and Fourteenth Amendments requires.

Hansberry v. Lee, 311 U.S. 32, 40-41 (1940) (internal citations omitted). In other words, "except in limited circumstances, which

are not alleged here, a court may not order injunctive relief against non-parties."  Talbert v. Smith, No. 7:05CV736, 2007 WL 773910, at *1 (W.D. Va. Mar. 9, 2007) (unpublished); see also 3M Co. v. Christian Invs. LLC, No. 1:11CV627, 2011 WL 3678144, at *4 (E.D. Va. Aug. 19, 2011) (unpublished) ("[T]he Fourth Circuit has made clear that an injunction, including a preliminary injunction, cannot be enforced against a defendant over whom a district court has not obtained personal jurisdiction through valid service of process." (citing R.M.S. Titanic, Inc. v. Haver, 171 F.3d 943 (4th Cir. 1999), and Gilchrist v. General Elec. Cap. Corp., 262 F.3d 295 (4th Cir. 2001))).[3]

---

[3] "The only significant exception to this rule involves nonparties who have actual notice of an injunction and are guilty of aiding or abetting or acting in concert with a named defendant or the defendant's privy in violating the injunction."  11A Charles Alan Wright, et al., Federal Practice and Procedure § 2956 (3d ed. April 2023 Update).  The Supreme Court also has "noted an exception to the general rule [against orders binding non-parties] 'where a special remedial scheme exists expressly foreclosing successive litigation by nonlitigants, as for example in bankruptcy or probate.'"  Steans v. Combined Ins. Co. of Am., 148 F.3d 1266, 1270 n.15 (11th Cir. 1998) (quoting Martin v. Wilks, 490 U.S. 755, 762 n.2 (1989), superseded in part by statute as recognized in Landgraf v. USI Film Prods., 511 U.S. 244, 251 (1994)).  As in Steans, "[n]o such exception is present in the instant case." Id.  The All Writs Act, 28 U.S.C. § 1651, does authorize federal courts to enter orders, "under appropriate circumstances, to persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice, and encompasses even those who have not taken any affirmative action to hinder justice."  United States v. New York Tel. Co., 434 U.S. 159, 174 (1977) (internal citations omitted).  However, "[t]he powers of the federal courts under the All Writs Act are not unlimited."  United States v. Venneri, 782 F. Supp. 1091, 1094 (D. Md. 1991); see also
(continued...)

10

Case 1:23-cv-00657-TDS-LPA   Document 36   Filed 12/22/23   Page 10 of 15

Simply put, the Court should not order the State Department or any State Department official to issue a K-1 visa to Plaintiff's fiancée because neither the State Department nor any State Department official has appeared in this action as a "responding party," Rahman, 198 F.3d at 511. Coordinately, the Court should not order Defendants (i.e., USCIS, its director, the Secretary of the Department of Homeland Security, and the two subordinate USCIS officials) to issue a K-1 visa to Plaintiff's fiancée, because Defendants do not possess the authority, much less a "clear duty to do th[at] specific act," id.; see also Macena, 2015 WL 6738923, at *3 ("Because USCIS has no authority to issue [a K-1] visa, [the plaintiff] cannot state a plausible claim for this relief against USCIS.").[4]  Lastly, the Court should decline to usurp the State

---

[3](...continued)
Pennsylvania Bureau of Corr. v. United States Marshals Serv., 474 U.S. 34, 42 (1985) (rejecting notion that federal courts may enter orders against non-parties based "upon a mere statement that such an order would be 'necessary or appropriate'").  Plaintiff has cited no authority supporting the view that the Court may employ the All Writs Act to order the relief sought in the First Preliminary Relief Motion or the Second Preliminary Relief Motion (see Docket Entry 22 at 1-7; Docket Entry 34 at 1-2) and independent research has identified no precedent for such an order.

[4] To the extent the Court might construe the First Preliminary Relief Motion and/or the Second Preliminary Relief Motion to request an order directing Defendants not to issue a K-1 visa to Plaintiff's fiancée but rather to approve his "petition[ to] the Department of Homeland Security to designate [her] as a nonimmigrant . . . fiancée," Regis, 769 F.3d at 879, and to "forward[ that approved petition] to the U.S. consulate in [her] home country," id., the Court should conclude that Plaintiff has not shown a likelihood of success on the merits of his APA and
(continued...)

Department's role – which operates independently of USCIS's role – in the K-1 visa process, by fashioning a "judicial visa" (or any other form of judicially-created authorization) for Plaintiff's fiancée to enter the United States, for at least two reasons.

First, "[a] preliminary injunction is an extraordinary remedy afforded prior to trial that temporarily provides <u>the relief that can be granted permanently after trial</u>." <u>BASF Agro B.V. v. Makhteshim Agan of N. Am., Inc.</u>, No. 1:10CV276, 2011 WL 2135129, at *1 (M.D.N.C. May 27, 2011) (unpublished) (Osteen, J.) (emphasis added) (internal quotation marks omitted). As the Introduction documents, the Complaint requests injunctive/mandamus relief <u>only</u> in the form of orders from the Court compelling USCIS (and/or the two subordinate USCIS officials) and the State Department to take

---

[4](...continued)
Section 1361 claims (i.e., the Complaint's only claims which could support injunctive/mandamus relief, <u>see</u> <u>Talbert v. United States</u>, 932 F.2d 1064, 1065-66 (4th Cir. 1991) ("The only relief provided for in the [FTCA] is money damages." (internal quotation marks omitted))), as required to secure preliminary injunctive/mandamus relief, <u>see</u> <u>Frazier</u>, 86 F.4th at 543. In that regard, for reasons articulated and authority cited in Defendants' brief in support of their motion to dismiss for lack of subject matter jurisdiction (<u>see</u> Docket Entry 31 at 1-20), it appears (A) that, at its core, the Complaint's primary "challenge is a . . . claim that USCIS improperly declined to exercise its discretion under 8 U.S.C. § 1184(d)(1) to waive the two-year meeting requirement [for fiancée designations]" (<u>id.</u> at 8), "[b]ut [that] this Court lacks jurisdiction to review USCIS's discretionary decision [as to that matter]" (<u>id.</u>), and (B) that "this Court lacks jurisdiction to review [any] unreasonable delay and unlawful withholding, [or related] mandamus claims under the mootness doctrine" (<u>id.</u>), because "USCIS already fully adjudicated Plaintiff's [petition for a nonimmigrant fiancée designation]" (<u>id.</u>).

certain actions.  (See Docket Entry 1 at 3, 21-22.)  To the extent the Second Preliminary Relief Motion now requests something different from the specific injunctive/mandamus relief actually requested in the Complaint, i.e., the issuance by the Court of "a 'visa or Judges [sic] Order' [authorizing Plaintiff's fiancée] to get on a plane and travel from New Delhi[,] India to Raleigh[-]Durham[,] North Carolina" (Docket Entry 34 at 1), the Court should deny that new request on grounds of overbreadth, see, e.g., Church of Holy Light of Queen v. Holder, 443 F. App'x 302, 303 (9th Cir. 2011) ("The injunction is therefore overly broad because it reaches beyond the scope of the complaint . . . ."); see also PBM Prods., LLC v. Mead Johnson & Co., 639 F.3d 111, 128 (4th Cir. 2011) ("[The Fourth Circuit] will vacate an injunction if it . . . does not carefully address only the circumstances of the case." (internal quotation marks omitted)).

Second, "[i]n general, the Supreme Court has held that 'it is not within the province of any court, unless expressly authorized by law, to review the determination of the political branch of the Government to exclude a given alien.'"  Macena, 2015 WL 6738923, at *4 (quoting United States ex rel. Knauff v. Shaughnessy, 338 U.S. 537, 543 (1950)).  "Courts of Appeals have consistently held that [this] doctrine of 'consular nonreviewability' precludes courts from reviewing a consular officer's decision to grant or deny a

13

visa to a foreign national." Id.[5] In light of that doctrine, "if [a] consular officer made erroneous conclusions [in connection with a K-1 visa application from Plaintiff's fiancée], the Court [would] not [be] in a position to review those conclusions." Id. As the Court remains "without jurisdiction to order an American consular official to issue a visa to [Plaintiff's fiancée]," Loza-Bedoya v. Immigration & Naturalization Serv., 410 F.2d 343, 347 (9th Cir. 1969), the Court should not exercise its equitable powers in a manner that would achieve the same result by simply granting Plaintiff's fiancée "the right to board a plane from New Delhi to Raleigh[-]Durham[,] N.C. immediately" (Docket Entry 34 at 2).

## CONCLUSION

Plaintiff has failed to establish entitlement to the preliminary injunctive/mandamus relief he has requested.

---

[5] "In one limited circumstance, when a visa is denied in a manner that burdens a citizen's constitutional rights, courts may review the decision to see if it was made on the basis of a facially legitimate and bona fide reason." Macena, 2015 WL 6738923, at *4 (internal citation and quotation marks omitted). If Plaintiff "assert[ed] a claim that the denial of his fiancée's nonimmigrant visa to enter the United States to marry him violated a constitutionally protected liberty interest," id., that claim would fail as a matter of law, because "the denial of [a] nonimmigrant K-1 visa to [Plaintiff's fiancée] does not prevent [him] from marrying [her] or eventually living with her together," id.; see also id. (citing lack of "legal authority for the proposition that constitutional rights flow from one's status as a fiancée or that there is a constitutional right to have a marriage ceremony in the United States").

14

**IT IS THEREFORE RECOMMENDED** that the First Motion for Preliminary Relief (Docket Entry 22) and the Second Motion for Preliminary Relief (Docket Entry 34) be denied.

                                            /s/ L. Patrick Auld
                                                **L. Patrick Auld**
                                 **United States Magistrate Judge**

December 22, 2023