IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ROBERT SARHAN, M.D.,          )
                              )
              Plaintiff,      )
                              )
         v.                   )
                              )
UNITED  STATES  CITIZENS  &   )
IMMIGRATION SERVICES (USCIS); )
UR  MENDOZA  JADDOU,  in  her )
official capacity as Director )
of USCIS, ALEJANDRO MAYORKAS, )          1:23cv657
in his official capacity as   )
Secretary   of   the   U.S.   )
Department   of   Homeland    )
Security; DONNA P. CAMPAGNOLA, )
in her official capacity as the )
Director of USCIS's California )
Service  Center;  and  SUSAN  )
DIBBINS,  in  her  official   )
capacity  as  Chief  of  the  )
Administrative Appeals Office, )
                              )
              Defendants.     )

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, District Judge.

This case concerns a challenge to a decision of the U.S. Citizens & Immigration Services ("USCIS") to deny the Form I-129F petition of pro se Plaintiff Robert Sarhan, M.D., to classify Shivani Bennet as his fiancée to permit her to enter the United States. Before the court are four matters. The first is Defendants' motion to dismiss the complaint for lack of subject matter jurisdiction. (Doc. 30.) Dr. Sarhan has responded in opposition (Doc. 33), and Defendants have replied (Doc. 35). The

second are Dr. Sarhan's motions for preliminary relief, which seek an order to require Defendants to issue a visa to permit his fiancée to travel to North Carolina. (Docs. 22, 34.)[1] The third is Dr. Sarhan's motion to disqualify the magistrate judge (Doc. 39), to which Defendants have responded (Doc. 40). Finally, also before the court are Dr. Sarhan's objections (Docs. 38, 41) to the memorandum opinion and recommendation of the magistrate judge denying preliminary injunctive relief (Doc. 36).

For the reasons set forth below, Defendants' motion to dismiss will be granted, and Plaintiffs' remaining motions as well as his objections to the recommendation of the magistrate judge will be denied as moot.

## I.   BACKGROUND

The relevant facts outlined in Dr. Sarhan's complaint (Doc. 1), which are taken as true for the purpose of Defendants' motion to dismiss, show the following:

Dr. Sarhan is a U.S. citizen and resident of Pittsboro, North Carolina. (Id. ¶ 13.) Defendant Alejandro Mayorkas is the Secretary of the U.S. Department of Homeland Security ("DHS"), and Defendant Ur Jaddou Mendoza is the USCIS Director. (Id. ¶¶ 14, 15.) Defendant Donna P. Campagnola is the Director of the USCIS

---

[1] Dr. Sarhan's first motion (Doc. 22) is captioned "Motion for Hearing" but requests mandamus relief "immediately." The second motion (Doc. 34) is an emergency motion to grant a visa for Shivani Bennet.

California Service Center, and Defendant Susan Dibbins is the Chief of the Administrative Appeals Office ("AAO") of the USCIS. (<u>Id.</u> ¶¶ 16, 17.)  Campagnola and Dibbins are alleged to be "responsible" for the denial of Dr. Sarhan's petition. (<u>Id.</u>)  All individual Defendants are sued in their respective official capacities. (<u>Id.</u> ¶¶ 14-17.)

Dr. Sarhan alleges that he met his fiancée, Shivani Bennet, online in June 2017. (<u>Id.</u> ¶ 30.)  She lives in New Delhi, India. (<u>Id.</u>)  They met in person in Australia once in June 2018 and one year later decided to get married. (<u>Id.</u>)

Dr. Sarhan filed a visa application on January 17, 2021. (<u>Id.</u> ¶ 40.)  Following USCIS's request for evidence later that year, Campagnola denied the application on January 7, 2022, due to a lack of evidence showing why Dr. Sarhan failed to fulfill the fiancée visa statute's "two-year meeting requirement." (<u>Id.</u> ¶ 41.)  Under this requirement, a non-citizen fiancée and citizen must have "met in person within 2 years before the date of filing the petition," subject to the Secretary of Homeland Security's discretion to waive it.  8 U.S.C. § 1184(d)(1).  Dr. Sarhan appealed the denial, and Dibbins denied the appeal. (<u>Id.</u> ¶¶ 43, 44.)

Based on these allegations, Dr. Sarhan brings six claims for relief.  The first claim, entitled "Contrary to Constitutional Right and Without Observance of Procedure Required by Law Arbitrary

3

and Capricious and Not in Accordance with Law," appears to complain that the failure to provide a reasonable period to rebut USCIS's findings and the denial of the petition violated Dr. Sarhan's right to due process under the U.S. Constitution.  (Id. ¶¶ 49, 50.)

His second claim, entitled "Action, Findings and Conclusions in Excess of Statutory Authority," contends that the USCIS acted "in excess of statutory jurisdiction, authority and short of statutory right" when it enforced 8 C.F.R. § 214.2(k) and seeks to have the agency's actions set aside under 5 U.S.C. § 706(2).  (Id. ¶ 55.)

His third claim, entitled "Agency Action Unlawfully Withheld and Unreasonably Delayed," contends that, under 5 U.S.C. § 706(2), the court can compel a withheld or unreasonably delayed agency decision and that, because of the delays Dr. Sarhan faced, Defendants' "actions and inactions must be held unlawful and set aside."  (Id. ¶ 64.)

His fourth claim, labeled "Agency Action Unlawfully Denied the Fiance Visa for Churning Fees," contends that USCIS's funding through fees is "illegal and unethical."  (Id. ¶ 71.)

His fifth claim, brought under the "Federal Tort Claim Act," seeks money damages and alleges that Campagnola and Dibbins "intentionally denied [his fiancée's] visa for churning fees" and "intentionally, maliciously and with long delays, denied [his fiancée's] visa without [] a chance to respond, a violation of due

4

process." (Id. ¶ 75.)

Finally, his sixth claim, entitled "Declaratory and Mandamus Relief," seeks both types of relief. (Id. ¶¶ 79-81.) He also seeks a writ of mandamus "compelling the USCIS to immediately issue the fiance visa" and "to expedite the K-1 visa." (Id. ¶¶ 83, 84.)

Dr. Sarhan moved on August 16, 2023, and again on November 16, 2023, for preliminary relief seeking an order granting Bennet a visa. (Docs. 22, 34.) After holding a hearing, the magistrate judge issued a memorandum opinion and recommendation that the court deny both motions. (Doc. 36.) Dr. Sarhan filed objections (Doc. 38, 41)[2] and a motion to disqualify the magistrate judge (Doc. 39).

Defendants now move to dismiss the complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). (Doc. 30.) The motion to dismiss is fully briefed and, like the other motions and objections, ready for resolution.

## II. ANALYSIS

Dr. Sarhan appears pro se, thus his pleadings "should not be scrutinized with such technical nicety that a meritorious claim should be defeated." Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978). But the liberal construction of a pro se plaintiff's

---

[2] The first set of objections was filed one day after the deadline and the second set one month after the deadline. The untimeliness ultimately is a moot point for the reasons discussed below.

filing does not require the court to ignore clear pleading defects in it, <u>Bustos v. Chamberlain</u>, No. 3:09-1760, 2009 WL 2782238, at *2 (D.S.C. Aug. 27, 2009), to become an advocate for the pro se party, <u>Weller v. Dep't of Soc. Servs.</u>, 901 F.2d 387, 391 (4th Cir. 1990), or to "construct full blown claims from sentence fragments," <u>Beaudett v. City of Hampton</u>, 775 F.2d 1274, 1278 (4th Cir. 1985) (noting that "[d]istrict judges are not mind readers"). Even under this more liberal standard, his claims plainly fail.

### A. Motion to Dismiss

#### 1. Claim One

Defendants contend that the court lacks subject matter jurisdiction over claim one because Congress stripped the federal district courts of jurisdiction to review discretionary decisions of the Secretary of Homeland Security, such as the decision to waive the requirement that the petition establish that the parties have met in person within two years before the date of the filing of the petition. (Doc. 31 at 12.) Dr. Sarhan contends that this jurisdictional limitation applies only to revocations, not visa applications. (Doc. 33 at 4.)

Federal courts have limited jurisdiction, which may be exercised only where it is specifically authorized by federal statute and by the Constitution. <u>Kokkonen v. Guardian Life Ins. Co. of Am.</u>, 511 U.S. 375, 377 (1994); <u>see, e.g.</u>, 28 U.S.C. § 1331. The burden is on a plaintiff to establish jurisdiction. <u>Kokkonen</u>,

6

511 U.S. at 377. If a court determines that jurisdiction is lacking, it cannot proceed at all, and its sole remaining duty is to state that it lacks jurisdiction and dismiss the case. <u>Steel Co. v. Citizens for a Better Env't.</u>, 523 U.S. 83, 94 (1998). A court lacks jurisdiction where Congress has validly deprived the court of it. <u>See</u> <u>Hamdan v. Rumsfeld</u>, 548 U.S. 557, 576-77 (2006). Because Defendants raise a facial (as opposed to factual) challenge to jurisdiction, the court must accept the complaint's factual allegations as true and afford the plaintiff the same procedural protections as those for a Rule 12(b)(6) motion to dismiss, which allows consideration of only certain materials outside the complaint, such as attachments to the complaint explicitly referenced therein. <u>Goldfarb v. Mayor & City Council of Balt.</u>, 791 F.3d 500, 508 (4th Cir. 2015) (discussing documents the court may consider beyond the complaint without converting the motion to dismiss into one for summary judgment); <u>see also</u> <u>Kerns v. United States</u>, 585 F.3d 187, 192 (4th Cir. 2009) (stating that a Rule 12(b)(1) non-movant receives the "same procedural protection as she would receive" under Rule 12(b)(6) when a facial challenge is raised).

As Defendants point out, Congress has expressly deprived the federal courts of jurisdiction to review "any other decision or action of [] the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion

7

of [] the Secretary of Homeland Security." 8 U.S.C.
§ 1252(a)(2)(B)(ii). Subparagraph (D) of the same provides,
however, that "an appropriate court of appeals" retains
jurisdiction to review "constitutional claims or questions of
law." Id. § 1252(a)(2)(D); Gomis v. Holder, 571 F.3d 353, 358
(4th Cir. 2009) (limiting jurisdiction under subparagraph (D) to
"colorable constitutional claims").

Statutorily, a fiancée visa classification may be granted to
the fiancée of a U.S. citizen "who seeks to enter the United States
solely to" marry "the petitioner within ninety days after
admission." 8 U.S.C. § 1101(a)(15)(K)(i). But a fiancée's "visa
shall not be issued . . . until the consular officer has received
a petition filed in the United States by the fiancée or fiancé of
the applying alien and approved by the Secretary of Homeland
Security." 8 U.S.C. § 1184(d)(1). "The petition shall be in such
form and contain such information as the Secretary of Homeland
Security shall, by regulation, prescribe." Id.

Critically here, the petition "shall be approved only after
satisfactory evidence is submitted by the petitioner to establish
that the parties have previously met in person within 2 years
before the date of filing the petition," among other requirements.
Id. "[T]he Secretary of Homeland Security in his discretion may
waive the requirement that the parties have previously met in
person." Id. (emphasis added). "As a matter of discretion, the

8

director may exempt the petitioner from [the two-year meeting] requirement only if it is established that compliance would result in extreme hardship to the petitioner or . . . violate strict and long-established customs of the K-1 beneficiary's foreign culture or social practice . . . ." 8 C.F.R. § 214.2(k)(2) (emphasis added). "Failure to establish that the petitioner and K-1 beneficiary have met within the required period or that compliance with the requirement should be waived shall result in the denial of the petition," but the denial "shall be without prejudice to the filing of a new petition once the petitioner and K-1 beneficiary have met in person." Id.

The laws governing Dr. Sarhan's petition are clear that the decision to waive the two-year meeting requirement rests within the discretion of the Secretary. 8 U.S.C. § 1184(d)(1) ("the Secretary of Homeland Security in his discretion may waive"); 8 C.F.R. § 214.2(k)(2) ("As a matter of discretion").

Dr. Sarhan's argument that 8 U.S.C. § 1252(a)(2)(B)(ii) only applies to a revocation is contrary to the plain text of the statute. While section 1252 is entitled "Judicial review of orders of removal," subsection (a)(2)(B)'s elimination of jurisdiction applies "regardless of whether the judgment, decision, or action is made in removal proceedings." See 8 U.S.C. § 1252(a)(2)(B)(ii) (listing exception not applicable here and applying to discretionary decision "under this subchapter," i.e., the

9

subchapter that also includes 8 U.S.C. § 1184(d)); <u>Lee v. U.S.</u>
<u>Citizenship & Immigr. Servs.</u>, 592 F.3d 612, 619 (4th Cir. 2010)
("[A]lthough § 1252 generally addresses judicial review with
regard to final orders of removal, the language "regardless of
whether the judgment, decision, or action is made in removal
proceedings" makes clear that the jurisdictional limitations
imposed by § 1252(a)(2)(B) also apply to review of agency
decisions made outside of the removal context."); <u>Kucana v. Holder</u>,
558 U.S. 233, 248 (2010) (listing numerous non-removal provisions
that are "shielded from court oversight by § 1252(a)(2)(B)(ii)").
Accordingly, Congress has stripped this court of jurisdiction to
hear Dr. Sarhan's claims as to the discretionary decision not to
waive the two-year meeting requirement.    8 U.S.C.
§ 1252(a)(2)(B)(ii); <u>see also</u> <u>Sharif v. Chertoff</u>, 497 F. Supp. 2d
928, 933 (N.D. Ill. 2007) (finding lack of jurisdiction for
discretionary decision under 8 U.S.C. § 1184(d) and collecting
similar cases).

    The remaining question is whether § 1252(a)(2)(D)'s carve-
out for constitutional challenges and questions of law saves Dr.
Sarhan's claim.  This provision requires Dr. Sarhan to raise any
constitutional or legal questions "upon a petition of review filed
with an appropriate <u>court of appeals</u>" — i.e., a circuit court of
appeals rather than this district court. 8 U.S.C. § 1252(a)(2)(D)
(emphasis added); <u>Wilkinson v. Garland</u>, 601 U.S. --, No. 22-666,

2024 WL 1160995, at *5 (Mar. 19, 2024) ("Section 1252(a)(2)(D) provides that a <u>court of appeals</u> may consider final orders of removal via petitions raising 'constitutional claims or questions of law.'" (emphasis added)). Put another way, section 1252(a)(2)(D) does not provide a "jurisdictional bootstrap into district court." <u>Lee</u>, 592 F.3d at 620 (additionally holding that, unlike § 1252(a)(2)(B)'s jurisdiction strip, section 1252(a)(2)(D) only applies in the context of removal proceedings); <u>see also</u> <u>Chan v. U.S. Citizenship & Immigr. Servs.</u>, 141 F. Supp. 3d 461, 468-68 (W.D.N.C. 2015) (finding no jurisdiction for district court to review constitutional claims or legal questions under § 1252(a)(2)(D)), <u>aff'd sub nom.</u> <u>Roland v. United States Citizenship & Immigr. Servs.</u>, 850 F.3d 625 (4th Cir. 2017).[3] Accordingly, the court lacks jurisdiction over Dr. Sarhan's first claim.[4]

---

[3] Rather than relying on § 1252(a)(2)(D)'s limitation to an "appropriate court of appeals," Defendants argued that there was no colorable constitutional claim. (Doc. 31 at 12 (citing <u>Gomis</u>, 571 F.3d at 358).) Though the court generally agrees with Defendants, as Dr. Sarhan himself alleges that he was permitted to make an appeal statement and that AAO heard his appeal and denied it on the merits, (Doc. 1 ¶¶ 43, 44; Doc. 1-3 (AAO Decision)), the court need not reach this issue, and indeed is proscribed from doing so by 8 U.S.C. § 1252(a)(2)(B)(ii).

[4] Dr. Sarhan alleges that Dibbins ignored the fact that he subsequently met with Bennet twice in 2022. (Doc. 1 ¶ 45.) Though, as noted, the court lacks jurisdiction to consider this claim, Dr. Sarhan does not establish how the meetings comply with the requirement that they occur in the period <u>prior to</u> the petition. 8 U.S.C. § 1184(d)(1).

11

### 2. Claim Two

Dr. Sarhan's second claim alleges that it is his "belief" that Campagnola and Dibbins are "not being genuine about this case," and that application of 8 C.F.R. § 214.2(k) is "in excess of statutory jurisdiction, authority and short of statutory right" under the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 et seq. (Doc. 1 ¶¶ 55, 56.) To the extent Dr. Sarhan challenges the Secretary's discretionary decision to deny the petition, the court lacks subject matter jurisdiction for the reasons stated above.

Dr. Sarhan otherwise provides no argument, case citation, or discussion as to his conclusory allusion to the APA for what appears to be an argument that the cited regulation is ultra vires. Although courts are admonished to avoid "drive-by jurisdictional rulings" where there is a colorable federal controversy, Dr. Sarhan's mere bare-bones citation to the APA in the complaint, without any other support, renders this argument "wholly insubstantial and frivolous." Holloway v. Pagan River Dockside Seafood, Inc., 669 F.3d 448, 452 (4th Cir. 2012) (suggesting court lacks subject matter jurisdiction where claim is "made solely for the purpose of obtaining jurisdiction[] or is so wholly insubstantial and frivolous that an invocation of federal jurisdiction should not be recognized"); Steel Co., 523 U.S. at 89 (stating that a failure to state a federal claim can be the basis of a Rule 12(b)(1) motion "only when the claim is 'so

12

insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy"). Moreover, the APA does not afford an implied grant of subject matter jurisdiction permitting judicial review of agency action. Califano v. Sanders, 430 U.S. 99, 105-07 (1977); see also Lee, 592 F.3d at 618 (affirming district court that rejected similar APA claim on jurisdictional grounds).

Thus, Dr. Sarhan has failed to demonstrate that the court has jurisdiction to entertain this claim.

### 3. Claims Three and Six

Defendants argue that claims three and six are moot because any claim of unreasonable delay and unlawful withholding has been obviated by USCIS's denial decision. (Doc. 31 at 16.) Dr. Sarhan responds with a conclusory rejection of Defendants' argument. (Doc. 33 at 6.)

"[T]he doctrine of mootness constitutes a part of the constitutional limits of federal court jurisdiction." United States v. Hardy, 545 F.3d 280, 283 (4th Cir. 2008) (internal quotation marks and citations omitted). "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Id. (quoting Powell v. McCormack, 395 U.S. 486, 496 (1960)). A circumstance that may moot a claim is when "the claimant receives the relief he or she sought to obtain through the claim." Friedman's, Inc. v. Dunlap,

13

290 F.3d 191, 197 (4th Cir. 2002).

To the extent that claims three and six seek a favorable decision under the APA and All Writs Act, the court lacks subject matter jurisdiction for the same reasons stated for claim one. 5 U.S.C. § 701(a)(1) (precluding jurisdiction under the APA where other "statutes preclude judicial review"); Block v. Cmty. Nutrition Inst., 467 U.S. 340, 345-46 (1984). To the extent claims three and six simply seek to compel a decision, such a claim is moot, as Dr. Sarhan has alleged that the USCIS and AAO have rendered decisions. (Id. ¶¶ 41, 43); Mohammed v. Holder, 695 F. Supp. 2d 284, 289 (E.D. Va. 2010) (mooting claim for mandamus relief where agency already rendered decision).[5]

### 4. Claims Four and Five

Defendants argue that claims four and five should be dismissed for lack of subject matter jurisdiction because Dr. Sarhan did not comply with the prerequisites to qualify for the FTCA's waiver of sovereign immunity, namely presentment of the claim to the agency before filing suit. (Doc. 31 at 18); 28 U.S.C. § 2675(a) (providing for presentment pre-requisite). Dr. Sarhan responds that he sent a notice of intent to sue on December 12, 2021, (Doc. 33-3), and received a receipt on December 28, 2021. (Doc. 33 at

---

[5] Dr. Sarhan's prayer for relief seeks mandamus relief against the State Department. (Doc. 1 ¶ 84.) The State Department is not a named defendant in this case, but the court has construed this request as one against the named Defendants. In any event, the outcome is the same.

14

6.) Defendants replied that this notice does not constitute presentment under the FTCA and, even if it did, it fails to specify the required "sum certain." (Doc. 35 at 4 (citing 28 C.F.R. § 14.2(a)).)

The FTCA provides jurisdiction to district courts for "claims against the United States, for money damages, [] for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). "[T]he underlying cause of action in an FTCA claim is derived from the applicable state law." Kerns, 585 F.3d at 194. In other words, an FTCA action "may only be maintained if the Government would be liable as an individual under the law of the state where the negligent act occurred." Id.

In his fourth claim for relief, Dr. Sarhan alleges that "churning" — i.e., his description of USCIS's funding through denials of applications that necessitate multiple filings — is "illegal and unethical" and states that it is "punishable by heavy fines and why [he] is filing a Federal Tort Claim [i.e., claim five]." (Doc. 1 ¶ 71.) He does not, however, cite any federal or state law giving rise to such a claim. That failure means he does

15

not raise a colorable federal question, and the court therefore lacks subject matter jurisdiction. Holloway, 669 F.3d at 452. Instead, the court considers these arguments under his fifth claim brought pursuant to the FTCA.

In his fifth claim, Dr. Sarhan appears to seek money damages from two individual federal officers whom he has sued in their respective official capacities. (Doc. 1 ¶ 76.) From the face of the complaint, it is unclear what underlying substantive tort, if any, Dr. Sarhan alleges. He alleges that Campagnola and Dibbins "intentionally denied" his fiancée's visa "for churning fees," and "intentionally, maliciously and with long delays" denied his fiancée's visa without giving a chance to respond, which he alleges is a violation of due process. (Id. ¶ 75.) He also refers to negligence, emotional distress, and loneliness, which could be liberally construed as raising a state common law tort claim. (Id. ¶¶ 74, 77.)

In any event, no construction of the claim against any named Defendant would give rise to subject matter jurisdiction. To be sure, although Defendants do not note it, the court would not have jurisdiction for a constitutional tort claim against Campagnola and Dibbins (or Director Jaddou or Secretary Mayorkas, for that matter) because a Bivens[6] action cannot lie against individual

_____

[6] Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403

16

federal officers sued in their official capacities. <u>Doe v. Chao</u>, 306 F.3d 170, 184 (4th Cir. 2002) ("[A] <u>Bivens</u> action does not lie against [] officials in their official capacity." (emphasis removed)). Nor would the court have jurisdiction if the complaint were construed to allege a common law tort because the FTCA precludes any civil action for money damages against a federal employee that could be brought against the United States under 28 U.S.C. § 1346(b), such as a common law tort. 28 U.S.C. § 2679(b)(1); <u>see, e.g.</u>, <u>Boles v. United States</u>, 3 F. Supp. 3d 491, 505-512 (M.D.N.C. 2014) (permitting claims of negligence and negligence per se under FTCA against the United States).

The court would also lack jurisdiction if it construed Dr. Sarhan's claim to be against USCIS or DHS[7] — i.e., the agencies sued in this action. The FTCA waives the jurisdictional bar of sovereign immunity for claims "against the United States." 28 U.S.C. § 1346(b). However, "[t]he authority of any federal agency to [] be sued in its own name shall not be construed to authorize suits against such federal agency on claims which are cognizable under section 1346(b) of this title[.]" 28 U.S.C. § 2679(a). In

_____

U.S. 388 (1971).

[7] Though Dr. Sarhan sues Secretary Mayorkas in his official capacity, official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." <u>Hafer v. Melo</u>, 502 U.S. 21, 25 (1991) (internal quotation marks and citation omitted). Accordingly, the court considers Dr. Sarhan's allegations as having been made against DHS as well.

17

other words, where, as here, federal agencies, rather than the United States, are sued in their own name, § 2679(a) bars a claim that is cognizable under § 1346(b). <u>F.D.I.C. v. Meyer</u>, 510 U.S. 471, 476 (1994).

If the complaint were construed as raising a state common law tort claim against USCIS or DHS for "negligen[ce]," "emotional distress," and "loneliness," (Doc. 1 ¶¶ 74, 77), the claim would be cognizable under § 1346(b). <u>Meyer</u>, 510 U.S. at 476 (describing claims brought under the "law of the State" as cognizable under § 1346(b)). Consequently, a state common law tort claim against the agency would be barred by § 2679(a). <u>Id.</u>

If, however, the court were to construe Dr. Sarhan's claim to allege a constitutional tort against USCIS or DHS because of the reference to "due process," (Doc. 1 ¶ 75), it would not be cognizable under § 1346(b). <u>Meyer</u>, 510 U.S. at 477-78 (explaining that constitutional tort claims can never be the source of substantive liability under § 1346(b) because the "law of the place" means "law of the State"). The court would still lack jurisdiction, but for a different reason than for a common law tort claim: the Supreme Court has made it clear that a federal court would not have jurisdiction to hear a constitutional tort claim against a federal agency because the claim would be an impermissible <u>Bivens</u> action against a federal agency. <u>Id.</u> at 486 (rejecting <u>Bivens</u> claim against agency, even where Congress had

18

enacted a "sue and be sued" provision independent of the FTCA); see also Ziglar v. Abbasi, 582 U.S. 120, 121 (2017) (stating that extending Bivens is a "disfavored judicial activity" (internal quotation marks omitted)); Egbert v. Boule, 596 U.S. 482, 486 (2022) ("[O]ur cases have made clear that, in all but the most unusual circumstances, prescribing a cause of action is a job for Congress, not the courts.").

Having reached these conclusions, the court need not consider whether leave to amend should be granted to permit naming the United States as a defendant because such an amendment would be futile. HCMF Corp. v. Allen, 238 F.3d 273, 276 (4th Cir. 2001) (stating that leave to amend should be denied where amendment would be futile). The waiver of sovereign immunity, and consequently the right to sue the United States in tort, exists entirely by consent as expressed in the FTCA, which fixes the terms and conditions upon which suit may be instituted. Brownback v. King, 592 U.S. 209, 212 (2021). The conditions of the waiver of sovereign immunity define the subject matter jurisdiction of the federal courts and must be strictly construed. McMahon v. United States, 342 U.S. 25, 27 (1951).

A plaintiff seeking money damages from the United States for the negligence or wrongful act or omission of a governmental employee in his official capacity must "first present[] the claim to the appropriate Federal agency and his claim shall have been

finally denied by the agency in writing and sent by certified or registered mail." 28 U.S.C. § 2675(a). An "[a]ction under this section shall not be instituted for any sum in excess of the amount of the claim presented to the federal agency." Id. § 2675(b).

A claim is presented

> when a Federal agency receives from a claimant, his duly authorized agent or legal representative, an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident; and the title or legal capacity of the person signing, and is accompanied by evidence of his authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian, or other representative.

28 C.F.R. § 14.2(a) (emphasis added).

"Requesting a sum certain is a necessary element of any FTCA administrative claim." Kokotis v. U.S. Postal Serv., 223 F.3d 275, 278 (4th Cir. 2000). The sum certain requirement is jurisdictional and cannot be waived. Est. of Van Emburgh v. United States, -- F.4th --, 2024 WL 1061791, at *4, *9 (Mar. 12, 2024) (citing McNeil v. United States, 508 U.S. 106, 111-13 (1993)) (affirming dismissal on jurisdictional grounds of plaintiff who did not present a sum certain); Plyler v. United States, 900 F.2d 41, 42 (4th Cir. 1990) (citing Henderson v. United States, 785 F.2d 121, 123 (4th Cir. 1986)); Kokotis, 233 F.3d at 278-79 (citing Ahmed v. United States, 30 F.3d 514 (4th Cir. 1994)) ("Failure to request a sum certain within the statute of limitations deprives

20

a district court of jurisdiction over any subsequently filed FTCA suit."). As the Fourth Circuit has explained, "[t]he sum certain requirement is not a trap for the unwary. Rather, this requirement allows an agency to assess a claim's settlement value." Kokotis, 233 F.3d at 279.

Even assuming that Dr. Sarhan's letter is an "other written notification of an incident," 28 C.F.R. § 14.2(a), Dr. Sarhan plainly failed to accompany the claim with a sum certain. (See Doc. 33-3 (omitting sum).) Accordingly, because he failed to comply with this requirement, the court lacks subject matter jurisdiction over the fifth claim, even if it were to be amended as described above. Kokotis, 223 F.3d at 278-79; Randhawa v. Dep't of Homeland Sec., No. 22-CV-3291, 2024 WL 578957, at *3 (D.D.C. Feb. 13, 2024) (preemptively rejecting possibility of amending complaint where plaintiff did not name the United States because amendment would be futile); Bustos v. Chamberlain, 2009 WL 2782238, at *2 (noting that liberal construction of a pro se plaintiff's filing does not require the court to ignore clear pleading defects in it).

In sum, the court lacks subject matter jurisdiction over claims four and five.[8]

---

[8] Dr. Sarhan argues in his responsive briefing that Defendants have committed a fraud on the court and cites to Federal Rule of Civil Procedure 60. (Doc. 33 at 7.) This is plainly improperly raised. Fed. R. Civ. 60(b) (requiring motion under rule "after the entry of the judgment or order"). Such contentions are also meritless.

21

**B. Remaining Motions and Objections to Recommendation**

Dr. Sarhan has also moved for preliminary relief to issue Bennet a visa. (Doc. 22, 34.) The magistrate judge issued a memorandum opinion and recommendation that the court deny the motions. (Doc. 36.) Dr. Sarhan then filed objections, which remain pending. (Docs. 38, 41.) Principally, Dr. Sarhan objects that the recommendation does not adequately consider whether he is likely to suffer irreparable harm if preliminary relief is not granted. (Doc. 38 at 12.) Dr. Sarhan has also filed a motion to disqualify the magistrate judge, where he chiefly reiterates his objections to the recommended ruling. (Doc. 39 at 4-9 (discussing magistrate judge's analysis of Winter factors for preliminary relief).) Because the court lacks subject matter jurisdiction over this matter, these motions and objections are properly denied as moot. Steel Co., 523 U.S. at 94.

However, the court is compelled to address Dr. Sarhan's baseless and scurrilous allegations against the magistrate judge. In response to his having received an adverse decision from the magistrate judge, Dr. Sarhan moves to disqualify him by charging that the judge is "dishonest" and "biased" and has "commit[ed] fraud on the court and tried to deceive the Plaintiff" by purposefully refusing to address Dr. Sarhan's claim that he is

suffering irreparable harm. (Doc. 39 at 1-2.)[9] Dr. Sarhan attacks the magistrate judge's memorandum opinion and recommendation as "fraudulent and biased" and charges that the magistrate judge "is intentionally dragging out his disqualification" by using "delaying tactics." (Doc. 42.)

Such personal attacks on the integrity of the magistrate judge will not be tolerated. The fact that a litigant proceeds pro se is not license to spew invective when the court rules adversely to his requests. It is a "time honored notion that the law and the courts of the United States are important parts of American society worthy of respect." Theriault v. Silber, 579 F.2d 302, 303 (5th Cir. 1978) (dismissing appeal with prejudice for "vile and insulting references to the trial judge"). Litigants are entitled to disagree with a court's decision, and no doubt courts make mistakes. But litigants must conduct themselves uprightly with respect for the judicial process, even when they disagree with a ruling. Cases are to be argued on their merits, and they will be

---

[9] Dr. Sarhan's complaints stem from a fundamental misunderstanding of the law. The magistrate judge properly concluded that he need not reach the issue of Dr. Sarhan's contention of irreparable harm because Dr. Sarhan's request for injunctive relief failed on the requirement that he show a likelihood of success on the merits. Absent that showing, the court need not address the remaining elements of the injunction test. Dr. Sarhan's argument that each preliminary injunction factor "must be articulated" refers only to the fact that a plaintiff must satisfy each one, see Pashby v. Delia, 709 F.3d 307, 320 (4th Cir. 2013), which the magistrate judge here found Dr. Sarhan failed to do. Consequently, Dr. Sarhan's frustrations are misplaced and based on a misunderstanding of the law.

decided on their merits. Attacking a judicial officer — here the United States magistrate judge — is wholly unacceptable. Dr. Sarhan is warned against further personal attacks on the magistrate judge or any judicial officer of the federal courts. The court may exercise its inherent power over litigants who abuse their right to appear in such a fashion if repeated conduct occurs, including the right to impose sanctions. Roadway Exp., Inc. v. Piper, 447 U.S. 752, 765 (1980) (noting the court's power to issue contempt sanctions to maintain the authority and dignity of the court).[10]

### III. CONCLUSION

For the reasons stated, therefore,

IT IS ORDERED that Defendants' motion to dismiss (Doc. 30) is GRANTED and the complaint is DISMISSED WITHOUT PREJUDICE; and

IT IS FURTHER ORDERED that Dr. Sarhan's motions for preliminary relief (Doc. 22, 34), motion to disqualify the magistrate judge (Doc. 39), and objections to the magistrate judge's memorandum order and recommendation (Docs. 38, 41) are all DENIED as MOOT.

/s/   Thomas D. Schroeder
March 26, 2024                     United States District Judge

---

[10] To the extent Dr. Sarhan expresses frustration with the Nation's implementation of its immigration laws (Doc. 39 at 7), his concerns raise political, not judicial, issues.

Case 1:23-cv-00657-TDS-LPA   Document 43   Filed 03/26/24   Page 24 of 24